UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SOLARKAL, LLC,                                      :

              Plaintiff,                    :

                                          OPINION AND ORDER
     v.                                           :

                                          25 Civ. 10007 (GHW) (GWG)

HOLT GOLLATZ et al.                                 :

              Defendants.                  :
-------------------------------------------------------------X

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE:

Plaintiff SolarKal, LLC ("SolarKal") brings suit against defendants Holt Gollatz and New World Strategies, LLC ("NWS"), seeking damages and declaratory relief. See Amended Complaint, filed Jan. 23, 2026 (Docket # 19) ("Compl."). Defendants have filed a motion to dismiss the suit under Fed. R. Civ. P. 12(b)(2) and 12(b)(6), and to stay or dismiss the suit pursuant to the "prior pending action doctrine," also known as the "first-filed rule."[1] For the reasons set forth below, the motion to stay is granted.

I.      BACKGROUND

    A.  SolarKal's Allegations

The following factual allegations are drawn from SolarKal's complaint and exhibits attached to the complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)

---

[1] See Notice of Motion, filed Feb. 11, 2026 (Docket # 20); Defendants' Memorandum of Law in Support, filed Feb. 11, 2026 (Docket # 23) ("Mem."); Declaration of Holt Gollatz in Support, filed Feb. 11, 2026 (Docket # 22); Declaration of James Graber in Support, filed Feb. 11, 2026 (Docket # 21) ("Graber Decl."); Plaintiff's Memorandum of Law in Opposition, filed Feb. 25, 2026 (Docket # 25) ("Opp."); Affirmation of Mel DeCandia in Opposition, filed Feb. 25, 2026 (Docket # 24) ("DeCandia Decl."); Defendants' Reply Memorandum of Law in Further Support, filed Mar. 4, 2026 (Docket # 26).

("For purposes of [Rule 12(b),] the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citation and internal quotation marks omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

SolarKal is in the business of "advising commercial real estate companies on converting solar potential into revenue."  Compl. ¶ 12.  It "hir[es] brokers as independent contractors and agents" whose work involves "generating solar development and installation leads, strengthening relationships with leads . . . , completing site evaluation forms and otherwise making efforts to collect all required information from leads and clients, and serving as a lead and client liaison." Id. ¶ 13.  Brokers receive a fee "for every lead that sign[s] an exclusive solar brokerage representation agreement," along with "commissions upon (i) a lead's execution of an exclusive solar project placement agreement and (ii) substantial completion of the lead's solar project."  Id.

Gollatz is one such broker.  See id. ¶ 14.  In March 2017, SolarKal engaged Gollatz's services, and the two signed what we refer to as the "First Broker Agreement," id., which is attached to the complaint, see First Broker Agreement, dated Mar. 8, 2017, annexed as Ex. A to Compl. (Docket # 19-1).  This contract incorporated and attached as an exhibit a "Solar Broker Non-Disclosure and Invention Assignment Agreement" ("NDA").  See First Broker Agreement at *12-18.[2]  Among other things, the NDA bound Gollatz to confidentiality and noncompetition with SolarKal.  See id. *12-15.  It also included this choice-of-law and forum-selection clause:

> This agreement (together with any and all modifications, extensions and amendments of it) and any and all matters arising directly or indirectly herefrom shall be governed by and construed and enforced in accordance with the internal laws of the state of New York applicable to agreements made and to be performed entirely in such state. . . . I hereby irrevocably consent and submit to the sole

---

[2] "*__" refers to the pagination assigned by the Court's ECF system.

2

exclusive jurisdiction of the United States District Court for the Southern District of New York and any state court in the state of New York that is located in the county of New York in connection with any legal action or quasi legal proceeding ("Proceeding") directly or indirectly arising out of or relating to this Agreement.

Id. at *15.

In January 2019, SolarKal and Gollatz signed a Second Broker Agreement. Compl. ¶ 16. It contained the following integration clause: "This Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter herein and supersedes all prior or contemporaneous discussions, understandings and agreements, whether oral or written, between them relating to the subject matter hereof." Second Broker Agreement, dated Jan. 7, 2019, annexed as Ex. B to Compl. (Docket # 19-2) ¶ 11(b). The Second Broker Agreement also purported to include a "Confidential Information and Invention Assignment Agreement," see id. ¶¶ 4, 9, but none is attached to the copy of the Second Broker Agreement submitted to the Court. The Second Broker Agreement did not itself contain a forum-selection clause.[3]

In April 2022, SolarKal signed a Third Broker Agreement — this time, not with Gollatz, but with NWS, an LLC whose sole member is Gollatz. See Compl. ¶¶ 4-5, 18. This contract, like the Second Broker Agreement, did not itself contain a forum-selection clause, although it also purported to include a "Confidential Information and Invention Assignment Agreement." See Third Broker Agreement, dated Apr. 3, 2022, annexed as Ex. C. to Compl. (Docket # 19-3). It also included an integration clause. Id ¶ 11(b).

In a paragraph captioned "Term and Termination," the Third Broker Agreement provided:

---

[3] The complaint alleges that the NDA, including its forum-selection clause, was "incorporated by reference in the 2019 Solar Brokerage Agreement [i.e., Second Broker Agreement] and the 2022 Solar Brokerage Agreement [i.e., Third Broker Agreement]." Compl. ¶ 9. No citation to any document is given for this assertion, however.

> Solar Broker shall serve as a solar broker to the Company for a period commencing on 4/3/22 and terminating on the date ten (10) business days after either party terminates this Agreement in writing, but in no event earlier than 6 months after the commencement of the term hereof (the "Term"). In the event of such termination, Solar Broker shall be paid for any portion of the Services that have been completed prior to the termination, provided that if the Solar Broker is terminated without cause, as determined by SolarKal in its sole and absolute discretion, Solar Broker shall be paid for any portion of the Services that have been completed within six (6) months following the date of termination.

Id. ¶ 4.

Under the Third Broker Agreement, NWS was entitled to "$300.00 for every lead that signs an Exclusive Solar Brokerage Representation"; "7.5% of SolarKal's contracted gross commission for every signed Confidential and Exclusive Solar Project Placement Agreement," contingent upon "SolarKal's permanent receipt of the Execution Payment by the selected Solar Partner"; and "22.5% of SolarKal's contracted gross commission upon the achievement of substantial completion of the Solar Broker's lead's project and contingent upon SolarKal's receipt of the Milestone Payment by the selected Solar Partner." Id. at *9. Despite these payment terms, SolarKal "advanced commissions to NWS as a down payment before [its] permanent receipt of the 'Execution Payment' from one client," High Street Logistics Properties LLC. Compl. ¶ 22. In connection with these advances, SolarKal and NWS "executed a Memo of Understanding on Clawback Payment for High Street Logistics Illinois Properties" ("MOU") in August 2024. Id. ¶ 24.

> The MOU provides in pertinent part:

> After getting the 7.5% initial commission payment, NWS agrees to pay some money back to SolarKal only if SolarKal's Development Fee is reduced . . . due to any of the following circumstances: . . . A structural study of one or more of the projects by a licensed structural engineer shows that installation of solar on the roof is infeasible.

MOU, dated Aug. 14, 2024, annexed as Ex. D to Compl. (Docket # 19-4) at *2.

In November 2024, after unsuccessful negotiations over a new broker agreement, SolarKal terminated the Third Broker Agreement.  Compl. ¶ 32.  Subsequently, in SolarKal's telling, "Defendants sought commissions on projects outside the scope of the relevant provision of the Broker Agreements, which SolarKal disputed at the time."  Id. ¶ 34.  SolarKal elaborates:

> Specifically, on or around December 20, 2024, the Defendants contended that they were entitled to $266,000.00 in commissions, not only for projects for which the Parties agreed that the Defendants' services were completed or paid prior to or within six months of the Defendants' termination — and for which SolarKal paid the Defendants $89,000.00 in commissions — but also projects for which the Defendants' services were not completed and for which no clients were signed.

Id. ¶ 35.  Then, in February 2025, defendants "abruptly sent SolarKal an e-mail titled 'Notice of Breach,' alleging SolarKal breached the Broker Agreements by disabling the Defendants' SolarKal e-mail account and removing the Defendants from SolarKal's Slack channel, maintaining that the Defendants were owed commissions."  Id. ¶ 38.  SolarKal now seeks a declaratory judgment that it properly terminated the Third Broker Agreement and that defendants are not entitled to any further commissions "in connection with services completed prior to or within six months of the termination of the Broker Agreements on November 22, 2024."  Id. at 13.

In November 2025, one of the projects referenced in the MOU "failed because the structure of the building could not be updated to accommodate the installation of the solar project."  Id. ¶ 26.  SolarKal states, "NWS was to pay back $24,923.00 of its initial commission payments in connection with that now-failed project, but has failed to do so."  Id. ¶ 27.  SolarKal now seeks this sum in damages.  See id. ¶¶ 46-49.

B.  Procedural History

On September 25, 2025, several months before SolarKal brought the instant action in the Southern District of New York ("S.D.N.Y."), NWS brought suit against SolarKal in Pennsylvania

state court through a writ of summons. See Writ of Summons, dated Sept. 25, 2025, annexed as Ex. A to Graber Decl. (Docket # 21-1).[4] We refer to NWS' suit as the Pennsylvania action and the instant action as the S.D.N.Y. action.

On December 2, 2025, SolarKal filed the initial complaint in the S.D.N.Y. action, naming one defendant, "Holt Gollatz d/b/a New World Strategies, LLC." See Complaint, filed Dec. 2, 2025 (Docket # 1).

On January 2, 2026, NWS filed a complaint in the Pennsylvania action, alleging, inter alia, breach of the Third Broker Agreement. See Complaint, dated Jan. 2, 2026, annexed as Ex. B to Graber Decl. (Docket # 21-2).

Gollatz then moved for dismissal of the initial complaint in the S.D.N.Y. action. See Notice of Motion, filed Jan. 5, 2026 (Docket # 9). SolarKal mooted the motion by filing an amended complaint. See Compl. The amended complaint — the operative complaint in the S.D.N.Y. action — added NWS as a defendant. See id.

On January 8, 2026, SolarKal removed the Pennsylvania action to the Eastern District of Pennsylvania. See Notice of Removal, dated Jan. 8, 2026, annexed as Ex. 4 to DeCandia Decl. (Docket # 24-4). On January 23, 2026, SolarKal filed a motion in the Pennsylvania action to transfer the case to the S.D.N.Y. under 28 U.S.C. § 1404(a) or the "first-filed rule," or in the alternative, to dismiss the Pennsylvania action for lack of personal jurisdiction. See Motion to Transfer, dated Jan. 23, 2026, annexed as Ex. 6 to DeCandia Decl. (Docket # 24-6). That motion

---

[4] We may take judicial notice of this and other court documents "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) (citation and internal quotation marks omitted).

remains pending.  See New World Strategies, LLC v. SolarKal, LLC, No. 2:26-cv-00103 (E.D. Pa. Jan. 8, 2026).

II.      LEGAL STANDARDS

The prior pending action doctrine — also known as the first-filed rule — holds that "[w]here there are two competing lawsuits, the first suit should have priority." Emps. Ins. of Wausau v. Fox Ent. Grp., Inc., 522 F.3d 271, 274-75 (2d Cir. 2008) (quoting First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989)) (alteration in original).  "Proper application" of the doctrine "requires that the first and subsequently filed case(s) have either identical or substantially similar parties and claims." Wyler-Wittenberg v. MetLife Home Loans, Inc., 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012) (citation omitted); accord Meeropol v. Nizer, 505 F.2d 232, 236 (2d Cir. 1974).  There are two exceptions to the doctrine: "(1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit." Emps. Ins. of Wausau, 522 F.3d at 275 (citations and internal quotation marks omitted).  "The first-filed rule is not to be applied mechanically, but the party that seeks to deviate from the rule has the burden of demonstrating that circumstances justifying an exception exist." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 555-56 (S.D.N.Y. 2000) (citations omitted); accord Allied World Surplus Lines Ins. Co. v. Elamex USA, Corp., 2024 WL 2212948, at *4 (S.D.N.Y. May 16, 2024).

When the doctrine applies, a "whether or not to stay or dismiss a proceeding rests within a district judge's discretion." Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991).

III.     DISCUSSION

Defendants argue that this Court lacks personal jurisdiction over them, that the NDA's forum-selection clause is inapplicable, that the complaint should be dismissed for failure to state

a claim, and that the case should be dismissed or stayed pursuant to the prior pending action doctrine.  See Mem. at 4-20.  Because we find that the prior pending action doctrine applies, we do not reach defendants' other arguments.

Our first task is to determine when NWS' suit was filed for purposes of the prior pending action doctrine.  Case law holds that when a suit first brought in state court is removed to federal court, "the state court filing date is the relevant benchmark" for the doctrine.  Mfrs. Hanover Tr. Co. v. Palmer Corp., 798 F. Supp. 161, 166 (S.D.N.Y. 1992) (collecting cases); accord Bull v. Cnty. of Erie, 2024 WL 1607001, at *4 (W.D.N.Y. Mar. 20, 2024), adopted by, 2024 WL 1606559 (W.D.N.Y. Apr. 11, 2024).  NWS' suit was filed on September 25, 2025, by means of a "praecipe for a writ of summons."  See Praecipe for Writ of Summons, annexed as Ex. 1 to DeCandia Decl. (Docket # 24-1), at *2.

SolarKal suggests that we must "look to the date the complaint was filed" in NWS' suit to determine if it was truly filed first.  Opp. at 8.  NWS' complaint in the Pennsylvania action was not filed until January 2, 2026, while SolarKal's initial complaint in the S.D.N.Y. action was filed on December 2, 2025.

Although the Second Circuit "has not yet given a clear answer to the question of whether the first filed rule is triggered by the filing of a complaint, which initiates the lawsuit, or by service of process, which asserts the court's jurisdiction over the parties," case law holds generally that "the filing of the complaint is the event that determines whether an action is first filed," Interwood Mktg. Ltd. v. Media Arts Int'l, Ltd., 1990 WL 209432, at *3 (S.D.N.Y. Dec. 12, 1990) (internal quotation marks omitted), as SolarKal points out, see Opp. at 8.  But this holding derives from Rule 3 of the Federal Rules of Civil Procedure, which specifically provides that a civil action "is commenced by filing a complaint with the court."  Interwood Mktg. Ltd., 1990

WL 209432, at *3 (citing Fed. R. Civ. P. 3).  The Federal Rules of Civil Procedure, however, only "apply to a civil action <u>after</u> it is removed from a state court."  Fed. R. Civ. P. 81(c)(1) (emphasis added).  Consequently, "Rule 3 is irrelevant to whether [an] action was properly commenced in state court prior to removal."  <u>Boyd v. Larregui</u>, 2023 WL 6626152, at *3 (D. Conn. Oct. 11, 2023) (quoting <u>Winkels v. George A. Hormel & Co.</u>, 874 F.2d 567, 570 (8th Cir. 1989)) (alteration in original).

Under Pennsylvania law, "[a]n action may be commenced by filing . . . a praecipe for a writ of summons."  Pa. R. Civ. P. 1007(1).  Thus, case law holds that "the clarity of Pennsylvania law compels the conclusion that a praecipe for a writ of summons sufficiently initiates an action under the first-filed rule."  <u>Aetna Inc. v. Mednax, Inc.</u>, 2018 WL 5264310, at *4 (E.D. Pa. Oct. 23, 2018).

In <u>Country Home Prods., Inc. v. Schiller-Pfeiffer, Inc.</u>, 350 F. Supp. 2d 561 (D. Vt. 2004), the District of Vermont confronted the exact circumstance we face here.  The defendants first sued the plaintiff in Pennsylvania through a writ of summons and that action was later removed to the Eastern District of Pennsylvania.  <u>See id.</u> at 565.  After the issuance of the writ of summons, and before any complaint was filed in Pennsylvania, the plaintiff sued the defendants in the District of Vermont.  <u>See id.</u>  Then the defendants filed a complaint in Pennsylvania state court.  <u>See id.</u> at 565 n.1.  On these facts, the court determined that the defendants' action was filed first:

> "Where a case originates in a state court, as this Pennsylvania lawsuit did, but is later removed to a federal court, the state rule controls the question of commencement."  <u>Med-Tec Iowa, Inc. v. Nomos Corp.</u>, 76 F.Supp.2d 962, 968 (N.D. Iowa 1999).  State law in Pennsylvania allows a civil suit to commenced by filing either of two documents: (1) a praecipe for a writ of summons; or (2) a complaint.  Pa. R. Civ. P. 1007.  Thus, the Pennsylvania Action is the first-filed suit and the suit in the Vermont Action was filed second . . . .

9

Id. at 570.[5]

In sum, for purposes of the prior pending action doctrine, NWS' suit was filed first on September 25, 2025, over two months before the S.D.N.Y. action was opened.

As to the question of whether the S.D.N.Y. action and the Pennsylvania action "have either identical or substantially similar parties and claims," Wyler-Wittenberg, 899 F. Supp. 2d at 244, SolarKal concedes that "both actions arise from the same contractual relationship . . . and involve the same parties, making this action and the Pennsylvania action substantially similar," Opp. at 9.

We would now turn to the two exceptions to the prior pending action doctrine, except that SolarKal offers no argument on either front. Instead, it merely asserts that the defendants have made "no compelling arguments for why staying this action in favor of the Pennsylvania Action is in the interest of judicial economy or the balance of convenience." Id. As noted, however, "the party that seeks to deviate from the [first-filed] rule has the burden of demonstrating that circumstances justifying an exception exist." Citigroup Inc., 97 F. Supp. 2d at 555-56 (S.D.N.Y. 2000). SolarKal provides no reason why we should deviate from the rule and thus has failed to meet its burden.

When the doctrine applies, the court where the first action was filed can "enjoin the suitor in the more recently commenced case from taking any further action in the prosecution of that case." AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 723 (2d Cir. 2010) (quoting Nat'l Equip. Rental, Ltd. v. Fowler, 287 F.2d 43, 45 (2d Cir. 1961)). "Even in the absence of such an injunction, however, the second court may be bound to stay its consideration

---

[5] Despite this determination, the court did not apply the prior pending action doctrine, citing the "balance of convenience" exception. See id.

of an action in deference to the first-filed proceedings." Id. Although "the decision whether or not to stay or dismiss a proceeding rests within a district judge's discretion," the Second Circuit has stated that "a district court can go 'beyond the allowable bounds of discretion' when it refuses to stay or dismiss a duplicative suit." Id. (quoting Adam, 950 F.2d at 92). In general, "[t]he Court should take whichever action it deems proper to avoid duplication of judicial effort, avoid vexatious litigation in multiple forums, achieve comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication." 7thonline, Inc. v. Colony Brands, Inc., 2025 WL 2172514, at *3 (S.D.N.Y. July 31, 2025) (internal citations and quotation marks omitted).

We think it appropriate to stay this case rather than to dismiss given that there are threshold arguments regarding personal jurisdiction that might result in dismissal of the Pennsylvania action. Additionally, the E.D. Pa. might decide that an exception to the prior pending action doctrine exists. See Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 557 n.4 (S.D.N.Y.2000) ("[I]t is the court in which the first-filed action was brought that should decide whether an exception to the first-filed rule applies."). We are aware that SolarKal makes much of the forum-selection clause in the NDA, see Opp. at 1, 4-5; but the Eastern District of Pennsylvania is "equally well-equipped to assess the validity of the forum-selection clauses and any exceptions that exist to the first-filed rule," Marsh & McLennan Agency LLC v. Alliant Ins. Servs., Inc., 2025 WL 2676532, at *5 (S.D.N.Y. Sept. 18, 2025);

CONCLUSION

For the foregoing reasons, defendants' motion to stay (Docket # 20) is granted. This case is stayed until the disposition of the suit in New World Strategies, LLC v. SolarKal, LLC, No. 2:26-cv-00103 (E.D. Pa. Jan. 8, 2026). The parties are directed to promptly inform the presiding

11

judge in that case of the issuance of this ruling.  The parties shall report by letter to this Court

within seven days of the termination of the Eastern District of Pennsylvania action.

       SO ORDERED.

Dated: May 21, 2026
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge